BROWNING–FERRIS, INC., Petitioner,

v.

Louis REYNA and Stella Reyna d/b/a
Condor Industries, Respondents.

No. D–3186.

Supreme Court of Texas.

Argued Sept. 15, 1993.

Decided Nov. 17, 1993.

Rehearing Overruled Jan. 5, 1994.

Sharon E. Callaway, Wallace B. Jefferson, San Antonio, for petitioner.

Michael M. Fulton, San Antonio, for respondents.

### Opinion

DOGGETT, Justice.

In this suit between two business competitors, we find no evidence to support an essential element of the cause of action alleging that one tortiously interfered with the contract of the other.

In September, 1987, a street sweeper owned by Condor Industries was struck in San Antonio by a truck owned by Browning-Ferris, Inc. (BFI). Unable to obtain reimbursement for the resulting property damage, Condor filed a negligence action against BFI in January 1988. Shortly thereafter, Condor underbid BFI for one of four available Highway Department contracts to provide street sweeping services in portions of

Dallas. In the summer of 1988 Condor was awarded this one-year contract and BFI was awarded the other three.

When it was terminated by the state after only one month, Condor amended its prior complaint against BFI by adding claims of tortious interference with contractual relations and conspiracy based on the events surrounding the cancellation of the Dallas contract. The trial court granted a directed verdict on the conspiracy claim, finding no evidence to submit to the jury. The jury found negligence and tortious interference, and the trial court rendered judgment on the verdict. The court of appeals affirmed, holding that the evidence of tortious interference was both legally and factually sufficient. 852 S.W.2d 540.

### I.

■ The elements of a cause of action for tortious interference with an existing contract are (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage and (4) actual damage or loss occurred. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991); *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex.1990). This appeal focuses solely on the second element.

■ According to testimony of Condor's President, Louis Reyna, shortly before being terminated, he had a conversation with Highway Department inspector John Dowell, who stated that both Dowell and his supervisor were "working with BFI to get [Condor] out of the contract." Dowell further stated that Condor would be defaulted "no matter what" Reyna did, and suggested that Reyna call James Hortenstein, the Southwest Regional Manager for BFI, to see if BFI would assume the contract. When later approached by Reyna, Hortenstein declined his offer.

Dowell's comment, as related by Reyna, forms the core of this tortious interference claim. Undoubtedly, this statement is legally

sufficient evidence that there was some *contact* between the Highway Department and BFI. Were it worded differently to describe clearly a wilful act of BFI, such a statement would have been legally sufficient evidence of interference to support the related jury finding. In the form offered, this testimony implies that BFI may have been a willing participant; *it does not establish that BFI, as distinguished from the State, was engaged in any improper conduct.* Standing alone, it does not show that this contact involved "knowing inducement" or other intentional interference by BFI as required to establish a cause of action in Texas for tortious interference. *See Robey v. Sun Record Co.,* 242 F.2d 684 (5th Cir.1957), *cert. denied,* 355 U.S. 816, 78 S.Ct. 20, 2 L.Ed.2d 33; *J.S. Brown Hardware Co. v. Indiana Stoveworks,* 96 Tex. 453, 73 S.W. 800 (1903); *Raymond v. Yarrington,* 96 Tex. 443, 73 S.W. 800, 803 (1903); *Sabine Prod. Co. v. Frost Nat'l Bank of San Antonio,* 596 S.W.2d 271, 275 (Tex. Civ.App.—Corpus Christi 1980, writ dism'd).

Condor contends that this exchange with Dowell must be considered in conjunction with evidence of unreasonable conduct by the State,[1] vandalism which appeared to be directed solely toward disabling equipment essential to fulfilling the contract,[2] and the previous San Antonio collision. The record is devoid of the slightest evidence that BFI influenced or was even aware of the State's apparently arbitrary conduct toward Condor. No evidence was offered to show either BFI involvement with the equipment vandalism or BFI intent regarding the vehicular accident that occurred before the Dallas contract ever began. Counsel for Condor candidly admits

that neither the Dowell statement, the State's conduct, the vandalism, nor the collision would, standing alone, support a jury finding that BFI committed a wilful act of tortious interference. When linked together, he urges, that the whole in some way equals more than its parts. To the contrary, we believe that some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.[3]

■ By its very nature, circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern. Condor's counsel suggests that the probability of BFI's involvement increases with the number of suspicious events even though it is not directly linked to any individual occurrence. He claims that this is not unlike the throwing of dice or the flipping of a coin; a single throw or a couple of flips may not demonstrate a pattern, but if repeated it will. Some disparage jury verdicts of which they disapprove as representing little more than a losing gamble—a toss of the coin or a throw of the dice. Our system of justice is designed to ensure that our fundamental right of trial by jury does not become some mere game of chance. We rely on the trial judge to instruct the jury on the relevant law and accord that judge broad latitude to grant a new trial if justice requires. Our courts of appeals are entrusted with the responsibility of reviewing the factual sufficiency of the evidence supporting a jury finding to prevent a manifestly unjust result, *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986), as well as the legal sufficiency.

■ The role of this Court is more circumscribed. We review only to ensure the

1. Condor argued that performance of its contractual obligations was made more difficult by the State's actions. For example, the State told Condor in writing that a particular type of sign was required during sweeping operations, yet when workers were about to begin sweeping with that sign in place, Condor was stopped until a different sign was acquired. After giving it permission to sweep on Sundays, the State cited this as a ground for default. Condor was limited to certain hours for operations, yet this restriction had never been imposed on other sweepers and was later lifted.

2. Shortly before sweeping was set to begin in Dallas, vandals broke into Condor's equipment yard. Devices vital to sweeping yet of otherwise little value were damaged or removed, while tools and personal items were left untouched.

3. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.").

proper application of legal standards by other courts and to determine whether there is some evidence which provides a legal basis for a finding. In reviewing a "no evidence" point, this court "must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *State v. $11,014.00*, 820 S.W.2d 783 (Tex.1991) (per curiam); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If more than a scintilla of such evidence exists, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. Indeed, evidence that we might well have discounted, had we been serving as jurors ourselves, cannot now be judicially erased from the record. We are not empowered to convert some evidence into no evidence. At the same time, while circumstantial evidence may be used to establish any material fact,[4] we are not empowered to convert mere suspicion or surmise into some evidence.[5] Where there is real evidence, we must uphold the jury verdict, but in cases such as this where there is only real suspicion, we must overturn it.

Because there is no legally sufficient evidence of a wilful act of tortious interference by BFI, we reverse the judgment of the court of appeals and hereby render judgment for BFI.[6]

SPECTOR, J., not sitting.

---

4. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975).

5. *Green v. Texas & P. Ry. Co.*, 125 Tex. 168, 81 S.W.2d 669 (1935) ("To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference. It should not be of such character as to permit of purely speculative conclusions.").

6. That portion of the judgment relating to negligence was not appealed and remains unaffected by our decision. 852 S.W.2d 540, 543 n. 1.